1   MICHAEL RUBIN (SBN 80618)
    PEDER J. THOREEN (SBN 217081)
2   Altshuler Berzon LLP
    177 Post Street, Suite 300
3   San Francisco, California 94108
    Telephone: (415) 421-7151
4   Facsimile: (415) 362-8064
    mrubin@altber.com
5   pthoreen@altber.com

6
    CLIFF PALEFSKY (SBN 077683)
7   KEITH EHRMAN (SBN 106985)
    McGuinn, Hillsman & Palefsky
8   535 Pacific Ave.
    San Francisco, CA 94133
9   Telephone (415) 421-9292
    Facsimile (415) 403-0202
10  cp@mhpsf.com
    kaemhp@aol.com
11
    Attorneys for Plaintiffs
12
                    IN THE UNITED STATES DISTRICT COURT
13
                    NORTHERN DISTRICT OF CALIFORNIA
14
                              OAKLAND DIVISION
15

16  GEORGE MARCHELOS, AMY              Case No. 4:12-cv-01899-YGR
    KASSENBROCK, for themselves and all
17  others similarly situated, and for the general   **NOTICE OF MOTION AND MOTION FOR
    public,                                          ORDER (1) CERTIFYING SETTLEMENT
18                          Plaintiffs,              CLASS; (2) GRANTING PRELIMINARY
                                                     APPROVAL TO PROPOSED CLASS
19           v.                                      ACTION SETTLEMENT AND PLAN OF
                                                     ALLOCATION; (3) DIRECTING
20  REPUTATION.COM, a corporation,                   DISSEMINATION OF CLASS NOTICE
                                                     AND CLAIM FORM TO CLASS; AND (4)
21                          Defendant.               SETTING FINAL APPROVAL HEARING
                                                     DATE AND RELATED DATES;
22                                                   MEMORANDUM IN SUPPORT OF
                                                     MOTION**
23
                                                     Hearing Date:  April 16, 2013
24                                                   Hearing Time: 2:00 p.m.
                                                     Courtroom: 5
25                                                   Judge: Hon. Yvonne Gonzalez Rogers

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

NOTICE OF MOTION AND MOTION ................................................................. 1

MEMORANDUM IN SUPPORT OF MOTION ................................................... 3

I.     INTRODUCTION .................................................................................. 3

II.    FACTS AND CASE HISTORY ........................................................... 3

    A.  Background And Pre-Filing Investigation ...................................... 3

    B.  The Parties' Claims and Defenses ................................................. 4

    C.  Post-Filing, Informal Discovery .................................................... 5

    D.  Settlement Negotiations and Mediation......................................... 7

    E.  Terms of the Settlement ................................................................. 7

        1.  Monetary Relief ..................................................................... 7

        2.  Plan of Allocation .................................................................. 8

        3.  Class Representative Payment .............................................. 10

        4.  PAGA Payment...................................................................... 10

        5.  Attorneys' Fees and Expenses ............................................. 11

        6.  The Release ........................................................................... 11

III.    CLASS CERTIFICATION................................................................... 12

    A.  The Prerequisites of Rule 23(a) Are Satisfied ............................. 13

        1.  Rule 23(a)(1):  Numerosity................................................... 13

        2.  Rule 23(a)(2):  Commonality................................................ 13

        3.  Rule 23(a)(3):  Typicality ..................................................... 15

        4.  Rule 23(a)(4):  Adequacy of Representation ....................... 15

    B.  The Prerequisites of Rule 23(b) Are Also Satisfied...................... 16

        1.  Common Questions Predominate Over Any Individual Issues ............... 16

        2.  A Class Action Is the Superior Mechanism to Resolve this Controversy Efficiently................................................... 17

IV.    THE SETTLEMENT IS NON-COLLUSIVE AND FALLS WELL WITHIN THE RANGE OF POSSIBLE JUDICIAL APPROVAL...................... 18

V.    THE PROPOSED NOTICE AND CLAIM FORM SATISFY
      DUE PROCESS ................................................................................................19

VI.   PROPOSED SCHEDULING ORDER ................................................................21

VII.  CONCLUSION..................................................................................................22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997) .................................................................................... 15, 16

*Chu v. Wells Fargo Investments, LLC,*
   2011 WL 672645 (N.D. Cal. Feb. 16, 2011) ............................................. 10

*Churchill Village, L.L.C. v. General Electric,*
   361 F.3d 566 (9th Cir. 2004) ..................................................................... 19

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) .................................................................................... 19

*Garcia v. Gordon Trucking, Inc.,*
   2012 WL. 5364575 (N.D. Cal. Oct. 31, 2012)........................................... 10

*Gautreaux v. Pierce,*
   690 F.2d 616 (7th Cir. 1982) ..................................................................... 18

*Hanlon v. Chrylser Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ........................................................ 12, 15, 16

*Harris v. Palm Springs Alpine Estates, Inc.,*
   329 F.2d 909 (9th Cir. 1964) ..................................................................... 13

*In re Omnivision Technologies, Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................... 10

*In re Prudential Sec. Inc. Ltd. P'ships Litigation,*
   163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................... 18

*In re Tableware Antitrust Litigation,*
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................... 18

*In re Vitamins Antitrust Litigation,*
   2001 WL 856292 (D.D.C. July 25, 2001).................................................. 18

*In re Wells Fargo Home Mortg. Overtime Pay Litigation,*
   571 F.3d 953 (9th Cir. 2009) ............................................................... 16, 17

*McClellan v. SFN Group, Inc.,*
   2012 WL 2367905 (N.D. Cal. June 21, 2012) ..................................... 14, 15

*McNamara v. Bre-X Minerals Ltd.,*
   214 F.R.D. 424 (E.D. Tex. 2002)............................................................... 18

*Meyer v. Portfolio Recovery Associates, LLC,*
   ___ F.3d ___, 2012 WL 6720599 (9th Cir. Dec. 28, 2012)...................... 15

*National Rural Telecommc'ns Cooperative v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... 18

*Rodriguez v. D.M. Camp & Sons*,
  2012 WL 6115651 (E.D. Cal. Dec. 7, 2012) ........................................................ 13

*Tait v. BSH Home Appliances Corp.*,
  ___ F.R.D. ___, 2012 WL 6699247 (C.D. Cal. Dec. 20, 2012) ................................ 13

*Tierno v. Rite Aid Corp.*,
  2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) ....................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S.Ct. 2541 (2011) ................................................................................. 13, 15

*Whiteway v. FederalEx Kinko's Office & Print Services, Inc.*,
  2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) ...................................................... 13

*Yokoyama v. Midland National Life Insurance*,
  594 F.3d 1087 (9th Cir. 2010) ......................................................................... 17

## FEDERAL STATUTES, REGULATIONS, AND RULES

29 U.S.C. §207(i) .............................................................................................. 8

29 U.S.C. §216(b) .............................................................................................. 5

29 C.F.R. §541.200(a) ....................................................................................... 17

29 C.F.R. §779.317 ........................................................................................... 17

29 C.F.R. §779.417 ........................................................................................... 17

Fed. R. Civ. P. 23(a) ............................................................................... 12, 13, 15

Fed. R. Civ. P. 23(a)(1). ................................................................................... 13

Fed. R. Civ. P. 23(a)(2). ............................................................................... 13, 14

Fed. R. Civ. P. 23(a)(3) ..................................................................................... 15

Fed. R. Civ. P. 23(a)(4) ................................................................................. 15, 16

Fed. R. Civ. P. 23(b) ..................................................................................... 13, 16

Fed. R. Civ. P. 23(b)(3) ............................................................................ 16, 17, 19

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................. 19

Fed. R. Civ. P. 23(c)(2)(B)(v) ............................................................................ 19

Fed. R. Civ. P. 23(e) ..................................................................................... 18, 19

## STATE STATUTES

California Business & Professions Code §17200, *et seq* ........................................... 12, 14

1

California Civil Code §1542 .............................................................................. 12

2

California Labor Code §203 ........................................................................... 9, 10

3

California Labor Code §2698, *et seq* ............................................................. 12, 14

4

California Labor Code §2699 .......................................................................... 10

5

## MISCELLANEOUS

6

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*,
    (4th ed. 2002) ............................................................................................. 18

7

8

Manual for Complex Litig., Third (Federal Judicial Ctr. 1995)....................... 18

9

7A Wright, Miller & Kane, *Fed. Prac. & Proc.* § 1778 (2d ed. 1986)).......................... 16

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 16, 2013, at 2:00 p.m., in Courtroom 5 of this Court, located at 1301 Clay Street, Oakland, CA 94612, plaintiffs George Marchelos and Amy Kassenbrock will, and hereby do, move this Court for the following relief with respect to the Stipulation and Settlement Agreement of Class & Collective Action Claims (the "Settlement" or "Settlement Agreement"):

1.  that the Court conditionally certify the following class (the "Class") for settlement purposes only:  all persons employed for more than one day by Reputation.com as a Reputation Advisor ("RA") or an Advanced Client Solutions provider ("ACS"), at any level or seniority (including managers), at any time from April 1, 2010, through and including February 26, 2013;

2.  that the Court appoint George Marchelos and Amy Kassenbrock as class representatives of the Class;

3.  that the Court appoint McGuinn, Hillsman & Palefsky and Altshuler Berzon LLP as Class Counsel;

4.  that the Court grant preliminary approval of the Settlement;

5.  that the Court approve mailing to the Class Members the proposed Notice of Proposed Class Action And Fair Labor Standards Act Settlement, including the attached Claim Form (Settlement Agreement, Exh. A);

6.  that the Court appoint Settlement Services, Inc. as the Settlement Administrator;

7.  that the Court schedule a hearing for final approval of the Settlement.

This motion is made on the grounds that the Settlement is the product of arms-length, good-faith negotiations; is fair and reasonable to the Class; and is worthy of preliminary approval, as more fully discussed in the following memorandum in support of the motion.

The motion is based on this notice of motion and motion; the accompanying memorandum in support of the motion; the Stipulation and Settlement Agreement of Class & Collective Action Claims; the Declaration of Michael Rubin in support of the motion; the accompanying [Proposed] Order (1) Certifying Settlement Class, (2) Granting Preliminary Approval to Proposed Class Action Settlement

1   and Plan of Allocation, (3) Directing Dissemination of Notice and Claim Form to the Class; and

2   (4) Setting Date for Fairness Hearing and Related Dates; the Court's record of this action; all matters of

3   which the Court may take notice; and such argument as the Court permits at the hearing on the motion.

4   Dated:  March 1, 2013                                    Respectfully submitted,

5

6                                                           By: _____ /s/ Michael Rubin_____
                                                                     Michael Rubin

7

8                                                           MICHAEL RUBIN
                                                            PEDER J. THOREEN
9                                                           Altshuler Berzon LLP

10                                                          CLIFF PALESFKY
                                                            KEITH EHRMAN
11                                                          McGuinn, Hillsman & Palefsky

12                                                          Attorneys for Plaintiffs
                                                            GEORGE MARCHELOS, *et al.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM IN SUPPORT OF MOTION

### I.    INTRODUCTION

Plaintiffs George Marchelos and Amy Kassenbrock ("Plaintiffs") and defendant Reputation.com, Inc. ("Reputation.com" or "Defendant") (collectively, the "Parties") have reached a proposed $1 million, non-reversionary, settlement of this litigation on behalf of approximately 80 current and former Reputation.com sales representatives employed in California.  On average, the Settlement will provide Class members with thousands of dollars each in compensation for unpaid wages and penalties Plaintiffs allege were owed to them.  The terms of the proposed settlement are set forth in the proposed Stipulation and Settlement Agreement of Class & Collective Action Claims (the "Settlement" or "Settlement Agreement"), attached as Exhibit 1 to the proposed Preliminary Approval Order.

The Settlement is the product of arms-length negotiations between the Parties and falls well within the range of reasonableness such that certification of the settlement class and notice to the class is appropriate.  The notice to be sent to the class members provides them with the best notice practicable under the circumstances and will allow each class member a full and fair opportunity to evaluate the Settlement and decide whether to participate, including by informing them of their estimated recovery and detailing the scope of the release.

Accordingly, this Court should grant preliminarily approval to the Settlement, approve the form and proposed manner of distribution of the Class Notice and related materials, and schedule a hearing for final approval of the settlement.

### II.    FACTS AND CASE HISTORY

#### A.    Background And Pre-Filing Investigation

Reputation.com sells a service to businesses and individuals concerned about negative or unflattering internet content.  Declaration of Michael Rubin ("Rubin Decl.") ¶2.  Reputation.com attempts to improve its customers' image with respect to internet content, in part by creating "positive" internet content to counteract and/or gain internet search engine "priority" over negative content when the customer's name is the object of an internet search.  *Id.*

Reputation.com employed Plaintiffs and other similarly situated individuals at its Redwood City office. *Id.* ¶3.  The principal job duty of these individuals is to sell Reputation.com's services through

phone conversations with potential customers, often after these individuals have telephoned Reputation.com to inquire about Defendant's services.  Defendant has two categories of employees, "Reputation Associates" ("RAs") and "Advanced Client Services" ("ACSs").   Defendant paid all of its employees through a combination of base salary and commissions earned from sales which the individual generated.  *Id.*

Prior to filing this case, Plaintiffs' counsel conducted a thorough investigation into the claims subsequently alleged in the Complaint.  *Id.* ¶4.  These efforts included numerous interviews with the Plaintiffs and a number of other Reputation.com employees who described in detail their job duties, their working hours, the company's employment policies and practices, and other information relevant to assessing the merits of the claims.  *Id.*

Based on this investigation, Plaintiffs alleged that prior to late 2011, Reputation.com scheduled its inside salespersons to work shifts of ten hours per day, five days per week.  *Id.* ¶5.  In late 2011, Reputation.com changed its standard shift to nine hours per day.  Plaintiffs' counsel obtained information that although Reputation.com's salespersons claimed to be working in excess of eight hours per day and 40 hours per week, Reputation.com did not pay them overtime premiums.  Plaintiffs' counsel also obtained information that Reputation.com routinely told its inside salespersons at the time of their hiring that they were "exempt" employees, *i.e.*, that they were not entitled to the protection of state and federal overtime laws.  Plaintiffs also alleged that Reputation.com did not create or maintain the wage and hour records that would be required by state and federal law if its salespeople were in fact non-exempt employees.  *Id.*

Based on their factual investigation and legal research, Plaintiffs' counsel concluded Defendant had misclassified its ACSs and RAs as exempt employees, and that these employees had worked substantial overtime hours without receiving the overtime premiums to which they would have been entitled had they been classified as non-exempt employees.  *Id.* ¶6.

### B.    The Parties' Claims and Defenses

<u>The Claims at Issue.</u>   On April 18, 2012, Plaintiffs George Marchelos and Amy Kassenbrock filed a class and collective action complaint against Reputation.com.  *Id.* ¶7.  In the lawsuit, Plaintiffs alleged that Reputation.com improperly classified its salespersons as employees exempt from the

overtime protections of the federal Fair Labor Standards Act ("FLSA") and California's Labor Code and Wage Orders, and Plaintiffs sought compensation due under these federal and state wage-and-hour laws. Plaintiffs further alleged that Reputation.com failed to provide them and the Class with accurate records of hours worked and failed to timely pay all wages due employees whose employment with Reputation.com had ended, as required by California law.  Plaintiffs also alleged that by committing these unlawful acts, Reputation.com engaged in unfair competition in violation of California Business and Professions Code §17200, *et seq*.  Finally, Plaintiffs brought a claim for penalties under California's Private Attorneys General Act, Labor Code §2698, *et seq*. ("PAGA").  Rubin Decl. ¶7.

<u>Reputation.com's Denial of Liability.</u>  Reputation.com denied all of Plaintiff's allegations. Rubin Decl. ¶8.  It contended that it had properly classified its employees as exempt from federal and state overtime requirements, specifically asserting that these employees are excluded from the protections of those laws under one or more of the following statutory exemptions:  (a) the commission sales exemption, (b) the administrative exemption, (c) the highly compensated employee exemption, (d) the executive exemption, and/or (e) the "combination" exemption.  Because all of Plaintiffs' claims hinge on their alleged misclassification, Reputation.com argued that it would be completely exonerated if it prevailed on any one of these exemption defenses.  *Id.*

Reputation.com also took the position that this case could not proceed as a class action.  *Id.*

### C.     Post-Filing, Informal Discovery

Immediately after the filing of the Complaint, counsel for the Parties entered into a tolling agreement preventing the running of Class members' limitations period for their FLSA claims[1] and began extensive discussions and exchange of information aimed at establishing accurate facts related to the claims in the litigation and exploring whether the Parties could reach a mutually agreeable settlement.  Rubin Decl. ¶9.  Through informal discovery, Reputation.com provided hundreds of pages of information relevant to the merits of Plaintiffs' claims and Defendant's defenses, and the damages to

---

[1] While Class members' state law claims were automatically tolled with the filing of the complaint, the FLSA limitations period continues to run, absent a tolling agreement, until the date that they affirmatively "opt in" to the FLSA claim in the litigation.  *See* 29 U.S.C. §216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

which Class members would be entitled if they prevailed.   Among the documents produced by Reputation.com through informal discovery and analyzed by Plaintiffs' counsel were:

- Spreadsheets setting forth employee earnings for all months since April 2010, broken down to show regular salary versus commissions, a calculation relevant to determining the applicability of the commission sales exemption; [2]

- Records showing the amount of time each day all ACSs and RAs were logged in to Reputation.com's phone system, which is relevant to determining the length of each shift;

- Spreadsheets indicating the duration of employees' employment, including the date when Class members had their employment terminated, which is relevant to assessing waiting time penalties under California Labor Code §203;

- Internal company policy documents related to an alleged change in workplace policies and practices that occurred in late 2011, reducing average overtime worked;

- Job descriptions (including prior and current job descriptions) for the positions at issue; and

- Offer letters for the named Plaintiffs. [3]

*Id.* ¶10.

In addition to reviewing and analyzing this informal discovery themselves, Plaintiffs' counsel engaged in numerous discussions with the Plaintiffs to verify the accuracy of information obtained from, and positions taken by, Reputation.com, and to determine what factual and legal responses may be available. *Id.* ¶11.

### D. Settlement Negotiations and Mediation

After analyzing the relevant data, the Parties scheduled a mediation before Mark S. Rudy, a well-

---

[2] Reputation.com produced compensation records for salespersons dating back to April 2010, based on its assertion that almost all of the RAs and ACSs were hired during or after the Summer of 2010. Reputation.com asserted that, prior to then, there were only handful of salespersons, whose records are not available.  Because of this limitation, the proposed Class Period and class definition exclude from the scope of the proposed Settlement any claims that may have arisen before April 2010.

[3] As a condition of the Settlement, Reputation.com is required to provide a sworn statement confirming that the data shared informally during the course of informal discovery is true and accurate to the best of its knowledge.  Settlement Agreement §IV.A.

regarded mediator with extensive experience litigating and mediating employment disputes.  Rubin Decl. ¶12.  On October 22, 2012, prior to that mediation, Plaintiffs' counsel met with Reputation.com's General Counsel and outside counsel to discuss various issues related to the case and the parties' expectations going into mediation, in an effort to ensure that the mediation would be as productive as possible.  Additionally, the parties exchanged lengthy mediation briefs setting forth each side's view regarding the strengths and weaknesses of the case, including detailed discussions regarding whether class and collective action certification was appropriate and the likelihood of Reputation.com prevailing on any of its exemption defenses.  Plaintiffs' mediation brief also included a detailed, claim-specific analysis regarding Reputation.com's potential financial exposure.  *Id.*

On October 24, 2012, the parties participated in a lengthy mediation with Mr. Rudy.  *Id.* ¶13.  At the end of that day, based on the extensive discussions and negotiations between the parties, Mr. Rudy formulated a mediator's proposal that he reduced to writing the following day.  The parties were given until November 7, 2012, to accept the offer, which they did, subject to minor modifications.  *Id.*

The Settlement that resulted from this process represents a compromise of highly contested claims, in light of the risks and uncertainties of continued litigation.  *Id.* ¶14.  Plaintiffs' counsel believe that the Settlement is fair, reasonable, and adequate and is in the best interests of the Class members.  *Id.*

### E.    Terms of the Settlement

#### 1.    Monetary Relief

The Settlement establishes a $1 million settlement fund, and each Class member who submits a timely and valid Claim Form is eligible to receive a share of that fund.  *See* Settlement Agreement §III.C.  The entire settlement fund will be paid out; no part of the $1 million will revert to Reputation.com.  *Id.* §III.E.4.  The settlement fund will be used to pay (1) money to all Class members who properly submit Claim Forms, pursuant to the plan of allocation discussed next, (2) class representative service payments to Plaintiffs to compensate them for their services to the Class, (3) attorneys' fees and costs to compensate Plaintiff's counsel for their services to the Class, (4) the reasonable fees and expenses of the Settlement Administrator (not to exceed $10,000, and estimated to be less than that), and (5) a payment to California's Labor and Workforce Development Agency pursuant to PAGA.

2.      **Plan of Allocation**

The payments to the Class members will be divided between an amount representing unpaid overtime premiums and other compensation, and a smaller portion allocated specifically to California Labor Code §203 penalties.

The bulk of the funds payable to Class members will be allocated based on the number of weeks worked by each Class Member during the Class Period, adjusted by a formula designed to reflect certain defenses asserted by Reputation.com that may have impacted Class members' recovery at trial.  *See id.* §III.C.3.  First, the formula divides the Class Period into two time periods, before and after December 2011.  As noted above, the evidence uncovered by Plaintiffs' counsel through their investigation, which was supported by corporate policies disclosed during informal discovery, indicated that Class members' schedules changed in late 2011.  Plaintiffs' counsel determined that, on average, Class members likely worked approximately three times as many overtime hours before December 2011, compared to the time period after that date.[4]  Workweeks in either time period are weighted accordingly.

Second, the formula takes into consideration Reputation.com's principal exemption defense in this action, namely, that Class members were exempt from overtime requirements under the federal and state commission sales exemption (sometimes also referred to as the "inside sales" or "retail or service establishment" exemption).  Under that exemption, certain salespeople are exempt from overtime if they earn more than 1.5 times the minimum wage and more than half of their income through commissions.  *See* 29 U.S.C. §207(i) (providing exemption "if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate . . . , and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services"); California Industrial Welfare Commission ("IWC") Wage Order Nos. 4-2001(3)(D) & 7-2001(3)(D) (providing exemption for "any employee whose earnings exceed one and one-half (1 ½) times the minimum wage if more than half of that employee's compensation represents commissions").  Although

---

[4] As set forth in the Complaint, prior to late 2011 Reputation.com scheduled Class members for shifts of 10 hours, and that schedule was reduced to nine hours thereafter.  If a Class member took a 30 minute unpaid lunch period, this would result in that Class member working 1.5 hours of overtime per shift prior to the end of 2011, and 0.5 hours of overtime per shift after that time.

Plaintiffs dispute the applicability of this exemption on other grounds, the settlement formula reflects the risk that Plaintiffs would lose on this issue by treating months during which a Class member earned more than half her income through commissions (and thus could potentially have qualified for the exemption) as half as valuable as those in which she earned half or less of her income through commissions (and thus could not qualify for the exemption, even if it were otherwise applicable).

To reflect these two adjustments, the settlement allocates amounts payable to Class members as follows:

- Each week worked before December 1, 2011, during a month in which the Class Member's commission was *50% or less* of income, will be assigned a weight of 6.

- Each week worked before December 1, 2011, during a month in which the Class Member's commission was *more than 50%* of income will be assigned a weight of 3.

- Each week worked after December 1, 2011, during a month in which the Class Member's commission was *50% or less* of income will be assigned a weight of 2.

- Each week worked after December 1, 2011, during a month in which the Class Member's commission was *more than 50%* of income will be assigned a weight of 1.

*Id.* §III.C.2. Each Class Member who submits a timely and valid Claim Form will be entitled to a share of the settlement funds in proportion to their total weeks worked, adjusted according to this point system. *Id.*

Under the Settlement, $70,000 is separately set aside as a payment for Labor Code §203 penalties. Settlement Agreement §III.C.1.b. Section 203 provides for waiting time penalties of up to 30 days' pay where an employer fails to timely pay all wages due to an employee upon termination of employment. The $70,000 in §203 penalties will be allocated to Class members whose employment terminated during the Class Period in the following manner: Each terminated employee's average monthly compensation shall be calculated, based on his or her total compensation at Reputation.com divided by the number of months the worked. Each terminated employee will then be awarded a *pro rata* share of the §203 penalties, based on that employee's average monthly compensation compared to the total of the average monthly compensations for all terminated employees. *Id.*

In sum, this plan of allocating both §203 penalties and other compensation is based on reasonable approximation of the relative value of each Class member's claim, in light of the factual and legal issues involved.  *See In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits.").

### 3.        Class Representative Payment

Prior to the final approval hearing, Plaintiffs will apply to the Court for an award of $5,000 each to George Marchelos and Amy Kassenbrock for the services they rendered to the Class.  *See* Settlement Agreement §III.C.1.e.  This amount is separate and apart from any other recovery to which they will be entitled under the Settlement as Class members.  This payment is intended to recognize the substantial time and effort that they have expended on behalf of the Class, including numerous discussions with Class Counsel, review of the documents produced by Reputation.com, and, in the case of Mr. Marchelos, participation at the mediation.  Rubin Decl. ¶15.

### 4.        PAGA Payment

The Settlement provides for a $20,000 payment to California's Labor and Workforce Development Agency pursuant to PAGA.  PAGA makes privately enforceable and provides penalties for certain violations of California's Labor Code.  *See* Labor Code §2699.  Employees generally recover 25% of penalties obtained under PAGA, while 75% are to be paid to the Labor and Workforce Development Agency.  *Id.* §2699(i).

Where, as here, PAGA penalties represent one of many different bases for recovery, it is common for the parties to treat a share of the total settlement as PAGA penalties and allocate a portion of that amount to the State.  The $20,000 allocated under the Settlement as California's share of PAGA penalties is well within the range routinely accepted by courts.  *See Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575, at *7 (N.D. Cal. Oct. 31, 2012) (approving $7,500 payment to State as part of $3.7 million settlement); *Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) ($7,500 of $6.9 million settlement).

### 5.    Attorneys' Fees and Expenses

Plaintiffs' counsel will request by separate motion that the Court approve a payment of up to 30% of the principal Settlement Fund ($300,000) to compensate them for their time and effort in bringing this case, and that it award them an additional amount up to $10,000 to reimburse them for the actual, out-of-pocket costs they have incurred during the litigation.  These amounts, if awarded, will be paid from the Settlement Fund.  Settlement Agreement, §III.C.1.c.[5]  Plaintiffs' counsel believe the attorneys' fees and costs that may be requested are fair and reasonable.  Rubin Decl. ¶16.  These fee and cost payments will be paid only if the Court approves them.

### 6.    The Release

Under the Settlement, all Class members, except those who timely and validly request not to participate in the Settlement, shall, upon the Settlement becoming final, release forever Reputation.com (and related individuals and entities), from all claims, demands, rights, liabilities, and causes of action arising during the Class Period, whether for economic damages, noneconomic damages, injunctive relief, restitution, penalties, or other monies, or equitable relief, that were or could have been asserted (whether in tort, contract, or otherwise), arising out of the following allegations, causes of action, or conduct:

- Any and all causes of action arising during the Class Period that were asserted, or that could have been asserted, arising out the facts alleged in the Complaint, including but not limited to any and all claims relating to classifying employees as exempt from overtime obligations, for alleged failure to pay overtime wages, payment of overtime-related wages upon termination, or alleged unlawful policies or practices related thereto, penalties, and interest in all such wages or for damages or penalties arising therefrom, including any and all claims related to such causes of action under the California Labor Code and related regulations and wage orders, specifically including any and all claims under the Private Attorney General Act of 2004, codified at

---

[5] The Settlement Agreement itself does not establish a cap for the reasonable expenses that may be sought by Class Counsel.  However, based on expenses incurred to date, they have selected a cap of $10,000 for inclusion in the Class Notice, to better inform Class members regarding the amount of expenses that may ultimately be sought.

California Labor §2698, *et seq.*, waiting time penalties, the Fair Labor Standards Act, and the California Unfair Competition Law, California Business and Professions Code §17200, *et seq.*; and

- Any claim for any loss, cost, damage, or expense arising out of any dispute over the non-withholding or other tax treatment of any of the proceeds received by any claimant as a result of the Settlement Agreement; and

- Any and all claims alleging that Reputation.com retaliated against them during the Class Period for complaining about their wages or for asserting wage-related claims, any wage-and-hour laws or other laws, and any other claims of any kind related to Reputation.com's failure to pay wages to employees arising out of the facts set forth in the Complaint; and

- Any and all claims for attorneys' fees and costs arising out of the facts set forth in the Complaint.

Settlement Agreement, §II.Y & Z; *see also id.* §III.F.[6]

This release is appropriately tailored because it encompasses only (a) claims arising during the Class Period (b) out of the facts alleged in the Complaint, and certain limited claims related to payments made under the Settlement.

## III.   CLASS CERTIFICATION

As part of the Settlement Agreement and for settlement purposes only, the parties have agreed to conditional certification of the following settlement class under Federal Rule Civil Procedure Rule 23:

> Any and all persons employed for more than one day by Reputation.com as a Reputation Advisor ("RA") or an Advanced Client Solutions provider ("ACS"), at any level or seniority (including managers), at any time from April 1, 2010 through and including February 26, 2013.

*See* Settlement Agreement §I.G.

When confronted with a request for certification of a settlement class, the Court first ascertains "whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

---

[6] The Settlement also contains a waiver of Section 1542 of the California Civil Code, as to the Named Plaintiffs only.  Settlement Agreement §III.F.

"In addition, . . . the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Id.* at 1022.

### A.    The Prerequisites of Rule 23(a) Are Satisfied

#### 1.    Rule 23(a)(1): Numerosity

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). "A proposed class of at least forty members presumptively satisfies the numerosity requirement." *Tait v. BSH Home Appliances Corp.*, ___ F.R.D. ___, 2012 WL 6699247, at *4 (C.D. Cal. Dec. 20, 2012); *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, 2006 WL 2642528, at *4 & n.3 (N.D. Cal. Sept. 14, 2006) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)) (same; no "magic number" necessary to satisfy numerosity). In this case, the Class includes approximately 80 employees, all of whom are readily identifiable by Reputation.com. Rubin Decl. ¶17. Because it is impracticable to join all of these individuals (*id.*), numerosity as required by Rule 23(a)(1) is satisfied.

#### 2.    Rule 23(a)(2): Commonality

Rule 23(a) also requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality 'does not mean merely that [class members] have all suffered a violation of the same provision of law,' but 'claims must depend upon a common contention.'" *Rodriguez v. D.M. Camp & Sons*, 2012 WL 6115651, at *5 (E.D. Cal. Dec. 7, 2012) (granting preliminary approval) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)) (alteration in original). Here, that standard is met.

The primary, common question of law and fact upon which the plaintiffs' claims are based and damages flow is whether Reputation.com correctly classified Class members as employees exempt from the overtime requirements of state and federal law. Rubin Decl. ¶18. The case includes several subsidiary and related common questions:

1.    Whether Reputation.com maintained a policy and practice of suffering and/or permitting Class members to work over eight and/or 12 hours per day, or 40 hours per week;

2.     Whether Repuation.com had a policy or practice of failing to properly compensate Plaintiffs and Class members for hours worked in excess of eight hours per day and/or 12 hours per day and/or 40 hours per week;

3.     Whether Reputation.com had a policy or practice of failing to create or maintain accurate records of the actual hours worked by Plaintiffs and Class members for each day, week, and pay period, and of their overtime hours and overtime pay due;

4.     Whether Reputation.com had a policy or practice of failing to provide Plaintiffs and Class members with paystubs or other documentation at the time of their wage payments which indicate the actual hours worked by the employee during that pay period and the employee's applicable hourly rate;

5.     Whether Reputation.com paid Plaintiffs and Class members their full wages when due at the time of each bi-monthly wage payment;

6.     Whether Reputation.com willfully failed to make timely payment of the full wages due to Plaintiffs and Class members who quit, who were discharged, or whose employment otherwise terminated;

7.     Whether Reputation.com's alleged policies and practices constitute unfair and unlawful business practices in violation of California Business & Professions Code §17200, *et seq.*;

8.     Whether, as a result of Reputation.com's alleged policies and practices, Plaintiffs and Class members are entitled to recover penalties under the California Labor Code and the applicable Wage Orders of the Industrial Welfare Commission;

9.     Whether, as a result of Reputation.com's alleged policies and practices as alleged herein, Plaintiffs and Class members are entitled to recover civil penalties under the California Labor Code Private Attorneys General Act, California Labor Code §2698, *et seq.*

Rubin Decl. ¶18.

These issues satisfy commonality for purposes of Fed. R. Civ. P. 23(a)(2).  *Cf. McClellan v. SFN Group, Inc.*, 2012 WL 2367905, at *4 (N.D. Cal. June 21, 2012) ("[T]he issues facing the class arise

from common questions involving whether Defendants' policies violate the California Labor Code. This is sufficient to satisfy the commonality requirement.").

### 3. Rule 23(a)(3): Typicality

Rule 23 also requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The commonality and typicality requirements of FRCP 23(a) 'tend to merge,' [and] they '[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Meyer v. Portfolio Recovery Assocs., LLC*, ___ F.3d ___, 2012 WL 6720599, at *2 (9th Cir. Dec. 28, 2012) (quoting *Dukes*, 131 S.Ct. at 2551 n. 5). "'[R]epresentative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Meyer*, 2012 WL 6720599, at *2 (quoting *Hanlon*, 150 F.3d at 1020).

Here, Plaintiffs' claims arise out of the same type of factual and legal circumstances surrounding the claims of each Class member. Rubin Decl. ¶19. Mr. Marchelos and Ms. Kassenbrock held, within the Class Period, the same positions as the rest of the Class, and were similarly classified as exempt from state and federal overtime requirements. *See id.*; Complaint ¶¶10-12. As such, their claims are reasonably co-extensive with those of the absent Class members, and the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Rule 23(a)(4): Adequacy of Representation

Rule 23 also requires that the class representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met where the class representatives: (1) have common, and not antagonistic, interests with unnamed class members, and (2) will vigorously prosecute the interests of the class through qualified counsel. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Hanlon*, 150 F.3d 1020.

Here, Named Plaintiffs possess the same type of interests and suffered the same type of injury as the other Class members. Rubin Decl. ¶20. In addition, they have provided valuable assistance in the investigation and prosecution of this matter, and helped bring about the favorable settlement. *Id.*

Plaintiffs' counsel have extensive experience in class action wage-and-hour litigation, including federal and state overtime class actions. *Id.* They also have the ability and resources to pursue these claims vigorously. *Id.* They are well qualified to be appointed as class counsel.

Because the adequacy requirement of Rule 23(a)(4) is satisfied for purposes of certification of the settlement class, Plaintiffs should be appointed as Class Representatives, and plaintiffs' counsel should be appointed as Class Counsel.

### B.     The Prerequisites of Rule 23(b) Are Also Satisfied.

As the Ninth Circuit has explained:

> To qualify for certification under [Rule 23(b)(3)], a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: common questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."

*Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)). Here, the requirements of Rule 23(b)(3) are satisfied.[7]

### 1.     Common Questions Predominate Over Any Individual Issues.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quotation marks and citation omitted). It focuses on the "relationship between the common and individual issues." *Id.* "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (quoting 7A Wright, Miller & Kane, *Fed. Prac. & Proc.* §1778 (2d ed. 1986)).

Reputation.com's liability centers on the company's uniform policy of classifying Class members as exempt from state and federal overtime requirements, and consequently failing to pay mandated overtime premiums. *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (although not dispositive, "[a]n internal policy that treats all employees alike for

---

[7] Since this motion is made in connection with a proposed class settlement, it is unnecessary to address or decide an additional consideration contained in Rule 23(b)(3) – "manageability" of a trial – since there will be no trial if this settlement is approved. *Amchem*, 521 U.S. at 620.

exemption purposes suggests that the employer believes some degree of homogeneity exists among the employees"). In addition to that policy, plaintiffs contend that the evidence would prove that Named Plaintiffs and the other Class members in fact hold or held similar positions and performed substantially similar job duties, thus rendering their eligibility for overtime susceptible to classwide resolution. *See supra* at II.A; Rubin Decl. ¶3.[8] Further, Reputation.com's purported exemption defenses raise numerous across-the-board legal questions that will predominate over any individual inquiries. Such questions include, for example, whether Reputation.com has the requisite "retail concept" to meet the federal commission sales exemption (*see* 29 C.F.R. §779.317), what the correct "representative period" is for determining whether Class members earned sufficient commissions to meet that exemption (*see* 29 C.F.R. §779.417), and whether Class members' activities selling Reputation.com's services require the "the exercise of discretion and independent judgment with respect to matters of significance," for purposes of the FLSA's administrative exemption (29 C.F.R. §541.200(a)).

For all of these reasons, common factual and legal issues would predominate.

### 2. A Class Action Is the Superior Mechanism to Resolve this Controversy Efficiently.

Rule 23(b)(3)'s second requirement is that "resolution of the issues on a class wide basis [be] superior to other methods available for the fair and efficient adjudication of the controversy." *Tierno v. Rite Aid Corp.*, 2006 WL 2535056, at *11 (N.D. Cal. Aug. 31, 2006). This requirement is satisfied because "there is no indication[] that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason." *Id.* at *11. In addition, individual lawsuits from dozens of individuals would be wasteful and inefficient. Furthermore, Class members may lack the resources to secure experienced, qualified counsel or to see litigation through to completion. Accordingly, certification of this settlement class is superior to any other method of resolving this matter, as it will promote economy, expediency, and

---

[8] Even if a court were to have to reach whether particular Class members earned sufficient commissions to qualify for the commission sales exemption, that question could be resolved by an examination of Defendant's payroll records; such simple calculations would not "predominate" over the many common questions. Similarly, individualized overtime damages determinations do not undermine the propriety of class treatment. *See Yokoyama v. Midland Nat'l Life Ins.*, 594 F.3d 1087 (9th Cir. 2010).

1    efficiency.

2         In sum, class certification for settlement purposes is appropriate.

3    **IV.   THE SETTLEMENT IS NON-COLLUSIVE AND FALLS WELL WITHIN THE RANGE OF POSSIBLE JUDICIAL APPROVAL.**

4

5         "The claims, issues, or defenses of a certified class may be settled . . . only with the court's

6    approval." Fed. R. Civ. P. 23(e).  Such approval "involves a two-step process in which the Court first

7    determines whether a proposed class action settlement deserves preliminary approval and then, after

8    notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecommc'ns*

9    *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  At the preliminary approval stage – the

10   present stage in this matter – the court need only "determine whether the proposed settlement is within

11   the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (internal

12   citations and quotations omitted); *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079-80 (N.D.

13   Cal. 2007) (the Court must find only that the proposed settlement is non-collusive and within the range

14   of possible final approval); *see also* Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*,

15   §11.25 (4th ed. 2002).  In other words, because the court cannot fully assess a settlement prior to

16   providing class members notice of the settlement and the opportunity to present objections, the court's

17   first-stage analysis consists of a review for "'obvious deficiencies.'" *In re Prudential Sec. Inc. Ltd.*

18   *P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (quoting Manual for Complex Litig., Third §30.41

19   at 237 (Federal Judicial Ctr.1995)).  This is a minimal standard.

20        As long as "preliminary evaluation of the proposed settlement does not disclose grounds to doubt

21   its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives

22   or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range

23   of possible approval," the Court should preliminarily approve the settlement.  *In re Vitamins Antitrust*

24   *Litig.*, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting Manual for Complex Litig., Third

25   (Federal Judicial Ctr. 1999)).  The Court should then direct the giving of notice to the Class members of

26   a final approval hearing, "at which arguments and evidence may be presented in support of and in

27   opposition to the settlement." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002)

28   4 Newberg, §11.25 (quoting Manual for Complex Litig., Third, at 237).

1    Here, the Parties negotiated the proposed Settlement in good faith and at arms' length.  Rubin

2    Decl. ¶21.  As noted above, significant investigation and informal discovery has allowed Plaintiffs'

3    counsel – who are experienced wage-and-hour class action attorneys – to assess the strengths and

4    weaknesses of the claims against Reputation.com and the benefits of the Settlement under the

5    circumstances of this case.  Plaintiffs' counsel believe that the settlement is fair, reasonable, and

6    adequate and is in the best interest of the Class members in light of all known facts and circumstances,

7    including the risk of significant delay and Defendant's asserted defenses.  *Id.*  The Settlement will

8    provide substantial recoveries to Class members, averaging in the thousands of dollars and allocated in a

9    manner that reasonably approximates the strength of their individual claims.  *Id.*  Thus, the proposed

10    Settlement easily satisfies the standards for preliminary approval.

11  **V.     THE PROPOSED NOTICE AND CLAIM FORM SATISFY DUE PROCESS.**

12    Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who

13  would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1).  The notice standard is satisfied

14  here.

15    The notice provided to members of a class certified under Rule 23(b)(3) must be the "best notice

16  that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).  Notice is satisfactory "if it

17  generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints

18  to investigate and to come forward and be heard."  *Churchill Village, L.L.C. v. General Electric*, 361

19  F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).  Moreover, notice that is mailed to each

20  member of a settlement class "who can be identified through reasonable effort" constitutes reasonable

21  notice.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).  For any class certified under Rule

22  23(b)(3), the notice must inform class members "that the court will exclude from the class any member

23  who requests exclusion."  Fed. R. Civ. P. 23(c)(2)(B)(v).

24    Here, the form and the manner of the Class Notice and the Claim Form have been negotiated and

25  agreed upon by all counsel.  Settlement Agreement, Exh. A (attached as an exhibit to the Proposed

26  Preliminary Approval Order).  The Class Notice will inform Class members of, among other things, (1)

27

28

the nature of this action and the essential terms of the Settlement; (2) the allocation of the Settlement fund, including an estimate of each Class member's settlement share,[9] the requests for the class representative service payments and the attorneys' fees and expenses, and the settlement administration costs that will be deducted from the Settlement fund; (3) how to participate in the Settlement; (4) how to opt out of the Settlement; (5) how to comment on or object to the Settlement; (6) this Court's procedures for final approval of the Settlement; and (7) how to obtain additional information regarding this action and the Settlement.  The Class Notice is written in plain English and is organized and formatted so as to be as clear as possible.  It encourages Class members to contact Plaintiffs' counsel with any questions.

The Parties propose that within ten (10) business days of the entry of an order granting this motion, Reputation.com will provide to the Settlement Administrator a database containing all of the information necessary for producing and mailing the Class Notice and Claim Form.  Settlement Agreement §VI.A.  Within thirty (30) days of the entry of an order granting this motion, the Settlement Administrator will mail the Class Notice and Claim Form (and a pre-paid, self-addressed return envelope) to the last known address of each Class Member from Reputation.com's records or the updated address from the National Change of Address database.  *Id.* §VI.B.  Notice will be sent by first-class mail.  *Id.*  Additionally, where a Class member's e-mail address is known, the Settlement Administrator will also send a pdf of the Class Notice to that Class member via electronic mail.  *Id.*  The Settlement Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom the notice is returned by the post office as undeliverable; Reputation.com will cooperate in the Settlement Administrator's efforts to obtain accurate contact information.  *Id.* §VI.D.

The Parties propose that, under the notice plan outlined above, the Class members will have seventy-five (75) days after the notice is mailed to consider the proposed Settlement and object to the Settlement or request not to participate in the Settlement (*id.* §§VIII & IX), and ninety (90) days after

---

[9] For each Class member, the Class Notice will set forth the Class member's approximate recovery.  At the notice stage, this will necessarily be an estimate, given that a claimant's recovery will depend on facts that will not be known until after the settlement approval process has been completed, including the rate of participation by Class members, the final cost of settlement administration, and any award of service payments and attorneys' fees.

the notice is mailed to submit claims for settlement shares (*id*. §VII).  The Settlement Administrator will assist Class members whose claims forms are returned but deficient in some respect.  *Id*. §VII.B.

The foregoing notice plan provides the best notice practicable under the circumstances and will provide Class members a full and fair opportunity to consider the terms of the proposed Settlement and make a fully informed decision on whether to participate, to object, or to opt out.

## VI.   PROPOSED SCHEDULING ORDER

The following schedule sets forth a proposed sequence for the relevant dates and deadlines, assuming the Court preliminarily approves the Settlement.

| Event | Time Limits According to Agreement | Date[10] |
|---|---|---|
| Deadline to provide Class database to Settlement Administrator | Within 10 business days after date of Preliminary Approval Order | April 30, 2013 |
| Deadline to mail Class Notice | Within 30 days after date of Preliminary Approval Order | May 16, 2013 |
| Deadline for filing attorneys' fees motion | 35 days before deadline for filing requests not to participate and objections | June 25, 2013 |
| Deadline for requests not to participate and objections | 75 days after the Class Notice is mailed | July 30, 2013 |
| Deadline for filing Claim Forms | 90 days after the Class Notice is mailed | August 14, 2013 |
| Deadline to file Motion for Class Representative Payments | 35 days prior to Final Approval Hearing | August 6, 2013 |
| Deadline to file Motion for Final Approval | 35 days prior to Final Approval Hearing | August 6, 2013 |
| Deadline to file reply briefs responding to any objections or oppositions | 2 weeks prior to Final Approval Hearing | August 27, 2013 |
| Final Approval Hearing | | September 10, 2013 |

---

[10] These dates assume that the Court grants preliminary approval on April 16, 2013.

**VII.    CONCLUSION**

For the foregoing reasons, this Court should (1) conditionally certify the proposed settlement class; (2) appoint Plaintiffs George Marchelos and Amy Kassenbrock as the Class Representatives; (3) appoint McGuinn, Hillsman & Palefsky and Altshuler Berzon LLP as Class Counsel; (4) grant preliminary approval to the parties' Settlement; (5) approve the mailing of the proposed Class Notice and Claim Form; (6) appoint Settlement Services, Inc. as the Settlement Administrator; and (7) schedule a final approval hearing.

Dated:  March 1, 2013                                      Respectfully submitted,


                                                          By:   ___/s/ Michael Rubin____
                                                                    Michael Rubin


                                                          MICHAEL RUBIN
                                                          PEDER J. THOREEN
                                                          Altshuler Berzon LLP

                                                          CLIFF PALESFKY
                                                          KEITH EHRMAN
                                                          McGuinn, Hillsman & Palefsky

                                                          Attorneys for Plaintiffs
                                                          GEORGE MARCHELOS, *et al.*